DRIESSEL, Respondent, vs. URKART, Appellant.

*October 4—October 24, 1911.*

*Slander: Damages: Malice: Conditional privilege.*

1. Absence of express malice in the utterance of false and defamatory words is no defense as against compensatory damages.
2. The communication of a report in response to a request by one interested in the matter is not conditionally privileged if defamatory matter is added to the report by the person professing to repeat it.

APPEAL from a judgment of the circuit court for Washington county: MARTIN L. LUECK, Circuit Judge.    *Affirmed.*

Both parties to this action are physicians, the plaintiff residing at Barton and the defendant at West Bend.    The defendant had been the family physician for the family of E. for about three years prior to November 24, 1908.    The plaintiff located at Barton as a practicing physician in September, 1908.    He was unmarried and had his office and sleeping rooms in the residence of E.    The complaint charges that the defendant uttered words intending to charge and charging the plaintiff with having been guilty of the crime of adultery with the wife of E.

The complaint charges that the defendant spoke to E., say-

ing that he wanted to tell E. some bad news.  It is alleged that he thereafter said that a man from Barton had been in his office and had told him (the defendant) that the plaintiff was sleeping with the wife of E. while E. was not at home.  The second count of the complaint charges that substantially these same words were thereafter uttered by the defendant in the presence of E. and E.'s wife.

The defendant testified that at the request of E. he had told him that a patient had spoken to him (the defendant) stating that it was not right to have a young unmarried man have the run of E.'s house while E. was away and that people were talking about it.

E. testified as follows:

"I met *Dr. Urkart* on or about November 24th, 1908, at about 7:30 in the evening, at Gadow's corner in the village of Barton.  I said, 'Hello, *Doc.*'  He said, 'Hello, John, just wait a minute, I will go in the house and come right out and tell you some bad news.'  When he came out of Gadow's, I asked him what the news was.  He said, 'A man from Barton was in my office and told me *Dr. Driessel* is sleeping with your wife while you are not at home.'  I asked him to come over to my house and dress my finger.  We went over.  My wife was there.  I told the doctor to tell the news he told me at Gadow's.  He said: 'A man from Barton was in my office and told me you were sleeping with *Dr. Driessel* while John was not at home.'  That he told the man not to speak that way because it wasn't so.  My wife asked who it was and he did not answer."

The patient of the defendant who had spoken with him regarding the plaintiff testified that she only said that some of the people of Barton liked the plaintiff and that some did not because he was an unmarried man, and that this statement was made in response to a question from the defendant as to how the people of Barton liked the plaintiff.

The jury returned the following verdict:

"(1) Did the defendant in the presence and hearing of J. E. speak of and concerning the plaintiff substantially the

words alleged in the ·first cause of action alleged in the complaint?  *A.* Yes.

"(2) If you answer the first question 'Yes,' then answer this question: Did said words impute to plaintiff the crime of adultery?  *A.* Yes.

"(3) If you answer the first question 'Yes,' then answer this question: Were said words spoken in response to a request for information made by J. E.?  *A.* Yes.

"(4) If you answer the first question 'Yes,' then answer this question: Were said words spoken with actual malice? *A.* No.

"(5) Did the defendant in the presence and hearing of J. E. and T. E. [wife of E.] speak of and concerning the plaintiff substantially the words alleged in the second cause of action alleged in the complaint?  *A.* Yes.

"(6) If you answer the fifth question 'Yes,' then answer this question: Did said words impute to the plaintiff the crime of adultery?  *A.* Yes.

"(7) If you answer the fifth question 'Yes,' then answer this question: Were said words spoken with actual malice? *A.* No.

"(8) If you answer either or both of questions number 1 and 5 'Yes,' then answer this question: What sum of money will compensate the plaintiff for the actual damages suffered in consequence of the speaking of said words?  *A.* $750.

"(9) If you answer either or both of questions number 4 and 7 'Yes,' then answer this question: What sum of money do you assess against the defendant for exemplary damages? *A.* Nothing."

The court denied a motion for judgment for the defendant on the verdict.   This is an appeal from the judgment on the verdict for the plaintiff.

The cause was submitted for the appellant on the brief of *Kuechenmeister & Barney,* attorneys, and *E. W. Sawyer,* of counsel, and for the respondent on that of *O'Meara & O'Meara.*

SIEBECKER, J.   It is the claim of the defendant that the court improperly awarded plaintiff judgment on the verdict because the jury found by the special verdict that he was not actuated by express malice in speaking the words and that

they were spoken in response to a request for information by another who had an interest therein. The absence of express malice, if the charge was falsely uttered, affords no justification against compensatory damages. As stated in *Reed v. Keith,* 99 Wis. 672, 75 N. W. 392:

"In absence of proof of express malice, or of facts and circumstances from which malice is justly inferable, the recovery must be limited to compensatory damages, or such as would be a fair recompense for injury to plaintiff's feelings, to his reputation, etc."

The defendant in his pleading and as a witness denied that he uttered the words concerning the plaintiff as charged in the complaint, which imputed to the plaintiff the commission of a criminal offense. The jury found that he did utter them as alleged and that he so uttered them in response to a request for information by one E., who had an interest in the matter. In the light of the pleading, the evidence, and the verdict, it is established that the jury found that the defendant was guilty of communicating to E. an alleged report concerning him and his family which contained defamatory statements concerning the plaintiff, and that such defamatory matter was added by the defendant. This finding is fully sustained by the evidence in the case. Under this state of the facts the defendant is liable for the communication made by him to E. at E.'s request. A communication, based on a report, to be conditionally privileged must contain only what actually happened; and hence any matter added by the defendant in making the communication, as he avers, which was defamatory of the plaintiff, was not privileged. As stated by the trial court in its opinion on this question: "His claim [defendant's] is that he heard other statements, not of a slanderous nature, and that those were what he repeated. The jury found against the defendant upon that question. . . ." Upon the issues raised and the verdict rendered the court properly awarded plaintiff judgment for the recovery of the compensatory damages.

*By the Court.*—Judgment affirmed.